# EXHIBIT B

## PURCHASE AGREEMENT

This Purchase Agreement ("**Agreement**"), made this 12th day of April, 2019, by and between International Place at Tysons, LLC or assigns, a Virginia Limited Liability Company, (herein referred to as "**Seller**"); and Omar Ayesh or his assigns (herein referred to as "**Buyer**").

### WITNESSETH:

1. **Property.**   Seller agrees to sell and Buyer agrees to buy at the price and upon the terms and conditions herein set forth that certain parcel of land together with the buildings and improvements thereon, herein referred to as the "**Property**", and further defined in Exhibit A.

    Between the date of this Agreement and Closing, Seller shall operate the Property only in the ordinary course of business and will not without the prior written consent of the Buyer (i) enter into any contracts for the performance of services or the delivery of supplies or materials to or for the benefit of the Property, (ii) undertake any capital improvement with respect to the Property, or (iii) permit the Property to be encumbered by any judgment, lien or indebtedness.

    Between the date of this Agreement and Closing, Seller shall not, and shall direct and use reasonable efforts to cause Seller's other employees, investment bankers, attorneys, financial advisors, agents and other representatives not to, solicit or initiate discussions or negotiations with any person concerning any sale of the Property, except as required by the Bankruptcy Court, including, but not limited to the Approval Order or an auction process in accordance with Section 363 of the Bankruptcy Code.  Nothing in this paragraph shall prohibit Seller or its representatives from providing information in response to, or entering into discussions or negotiations with, persons making unsolicited inquiries or offers with regard to the Property to the extent they conclude the provision of such information is required to satisfy any of their respective fiduciary duties.  Seller acknowledges that Buyer's damages at law would be an inadequate remedy for the breach by Seller or its representatives of this provision and agrees in the event of such breach that any party hereto may obtain temporary or permanent injunctive relief restraining a breaching party from such breach, and, to the extent permissible under applicable statutes and rules of procedure and upon proper proof, a temporary injunction may be granted immediately upon commencement of any such suit.

    After the date of this Agreement, Seller shall not enter into any new lease or other form of occupancy agreement or any amendment or modification to any existing lease or occupancy agreement, unless Seller obtains the prior written approval of Buyer, which approval may be granted or withheld by Buyer in its sole and absolute discretion.  While this Agreement remains in effect, Seller shall not agree to any lease termination that is not already scheduled or permitted pursuant to any existing Lease, unless Seller obtains the prior written approval of Buyer, which approval may be granted or withheld by Buyer in its sole and absolute discretion. Buyer shall respond to such request, approving or rejecting same, in writing within five (5) business days after Buyer's receipt of a written Seller's written request.

2. **Purchase Price.**   The purchase price (the "**Purchase Price**") for the Property shall be Eighteen Million Dollars ($18,000,000.00). The Purchase Price shall be payable as follows:

    a.   The sum of Five Million Dollars (**$5,000,000.00**) shall be paid by Buyer to Fidelity National Title Insurance Company ("**Escrow Agent**" or "**Fidelity**") by available funds no later than two (2) business days following the full execution of this Agreement, to be held

by the Escrow Agent in a federally insured, non-interest bearing escrow account in accordance with the terms hereof as an earnest money deposit (the **"Deposit"**). The Deposit shall be fully refundable for any reason or no reason prior to the expiration of the Due Diligence Period.

b.  The balance of the Purchase Price (subject to adjustment for closing expenses and prorations as herein provided) in the sum of Thirteen Million Dollars ($13,000,000.00) shall be paid by Buyer to Seller by immediately available funds at Closing hereunder. Likewise, Escrow Agent shall release to Seller the Deposit at Closing hereunder.

3.  **Closing.**    Subject to the terms of Section 6 below, the closing of the sale and purchase of the Property (the **"Closing"**) shall be held no earlier than the first business day after the Approval Order has become final and non-appealable (contemplated to be fifteen (15) days after entry of the Approval Order, if no motion for re-hearing or reconsideration is pending, and if no appeal has been filed), **or at such earlier or later date which is mutually agreeable between Buyer and Seller**, provided, however, that such Closing shall take place simultaneously with the closing to be held in connection with the pending sale of the property generally known as 8133 Leesburg Pike, Vienna, Virginia 22182, but in no event later than 11:00 a.m. on June 28, 2019, and may only be extended to permit Seller to cure the Other Title Exceptions (defined below). Seller agrees to deliver title and possession of the Property to Buyer at Closing by special warranty deed substantially in the form attached hereto as Exhibit B, executed and acknowledged by Seller, conveying Seller's title to the Property to Buyer, free and clear of all liens and encumbrances of any kind or description except the Permitted Title Exceptions (the **"Deed"**).

4.  **Title.**

a.  Buyer shall examine title to the Property during the Due Diligence Period to determine whether the same is good and marketable and can be insured by a recognized title insurance company of its choice at standard rates for the amount of the Purchase Price, subject only to: (i) the specific exceptions (exceptions that are not part of the promulgated title insurance form) in the title commitment that (a) Buyer does not object to in the Title Objection Notice, or (b) that Buyer objects to in the Title Objection Notice (hereinafter defined), but which Seller elects not to cure to the extent permitted by the foregoing terms, and which Buyer thereafter accepts; (ii) real estate taxes not yet due and payable; and (iii) any exception arising out of an act of Purchaser or its representatives, agents, employees or independent contractors (Items (i) through (iii) collectively, the **"Permitted Title Exceptions"**).

b.  In the event that Buyer will not, because of a cloud on or deficiency in the title to the Property, be able to obtain title insurance in accordance with the provisions of Section 4(a), above, it will, not later than the last day of the Due Diligence Period, send written notice to Seller (the **"Title Objection Notice"**) stating that title insurance cannot be obtained in accordance with Section 4(a) and specifying the unacceptable title exceptions as to why insurance cannot be obtained (the **"Other Title Exceptions"**). Seller shall have three (3) business days following its receipt to the Title Objection Notice in which to respond to Buyer in writing informing Buyer as to which Other Title Exceptions, if any, Seller will agree to cure and cause to be removed from title prior to Closing.

2

Case 18-10431-BFK    Doc 105-2    Filed 04/17/19    Entered 04/17/19 16:19:41    Desc
Exhibit B - Purchase Agreement Between the Debtor and Omar Ayesh    Page 4 of 23

    c.   Buyer's obligation to close is conditioned on title to the Property at Closing being insurable at standard rates, and subject only to Permitted Title Exceptions (the "**Title Insurance Policy**").

5.  **Condemnation.**   In the event that at any time prior to Closing all or a material portion of the Property is acquired by authority of any governmental agency in the exercise of its power of eminent domain or by private purchase in lieu thereof, Buyer shall have the right to terminate this Agreement by giving written notice to Seller and Agents. For purposes of this Section, "material" shall be deemed to mean an adverse impact on Buyer's intended development of the Property, or elimination of access to the Property. In such event, Escrow Agent shall forthwith return to Buyer the Deposit and no party shall have any further rights against, or obligation to, any other party except those that expressly survive termination of this Agreement. Seller agrees not to solicit condemnation. If Buyer accepts the Property following a condemnation, Buyer shall pay the Purchase Price to Seller, Seller shall assign to Buyer all of Seller's rights in and to the proceeds of the condemnation, and the Purchase Price shall be reduced only by the amount of any awards or damages owed to or received by Seller.

6.  **Bankruptcy Approval.** Seller filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code 11 U.S.C. §101 et seq. (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Eastern District of Virginia, Alexandria Division ("**Bankruptcy Court**"), Case Number 18-10431-BFK (the "**Bankruptcy Case**"). Seller remains in the control and possession of its assets and business as a debtor-in-possession under sections 1107 and 1108 of the Bankruptcy Code. The Property shall be sold and conveyed to Buyer, on a private sale basis, free and clear of all liens, mortgages, liabilities and encumbrances, including free and clear of [i] the Lease Agreement dated as of December 29, 2015, by and between International Place at Tysons, LLC and Advance Global Solutions, Inc. [the "**Advance Global Lease**"], and [ii] the Parking License Agreement dated as of September __, 2017, by and between International Place at Tysons, LLC and Presidential Carpentry, LLC [the "**Presidential License**"]), as the result of an Order (as defined below) approving the transactions contemplated by this Agreement issued by the Bankruptcy Court pursuant to Sections 363 and 365 of the Bankruptcy Code. The Advance Global Lease and the Presidential License shall both be terminated by Seller prior to the Closing Date, and shall both be deemed rejected by way of the Approval Order. Within five (5) business days following the full execution of this Agreement, Seller shall file a motion with the Bankruptcy Court seeking entry of an order (the "**Approval Order**") (i) approving the terms of this Agreement, on a private sale basis, and (ii) establishing a date for the sale hearing conducted under Section 363 of the Bankruptcy Code (the "**Sale Hearing Date**") within twenty-one (21) days following the conclusion of the Due Diligence Period (as hereafter defined) or the soonest date thereafter made available by the Bankruptcy Court, The Approval Order shall be in form and substance acceptable to Buyer in its sole discretion. If the Approval Order or any other orders of the Bankruptcy Court relating to this Agreement shall be appealed by any person (or a motion for rehearing or re-argument shall be filed with respect thereto), Seller agrees to take all steps as may be reasonable and appropriate to defend against such appeal, or motion, and Buyer agrees to cooperate in such efforts at no additional material cost to Buyer. Each party hereto agrees to use its reasonable best efforts to obtain an expedited resolution of such appeal; provided that nothing herein shall preclude the parties hereto from consummating the transactions contemplated herein if the Approval Order shall have been entered and has not been stayed, at Buyer's sole and exclusive option. Seller shall reasonably cooperate with Buyer and its representatives in connection with all contested matters arising in connection with the Approval Order. Such cooperation shall include, but not be limited

3

to, consulting with Buyer at Buyer's reasonable request concerning the status of such contested matters and providing Buyer with copies of requested pleadings, notices, proposed orders and other documents relating to such matters as soon as reasonably practicable in connection with any submission thereof to the Bankruptcy Court. Seller further covenants and agrees that the terms of any plan subsequently submitted by Seller to the Bankruptcy Court for confirmation shall not conflict with, supersede, abrogate, nullify, modify or restrict the terms of this Agreement and the rights of Buyer hereunder, or in any way prevent or interfere with the consummation or performance of the transactions contemplated by this Agreement including, without limitation, any transaction that is contemplated by or approved pursuant to the Approval Order. Seller also agrees to cooperate with Buyer in causing the Advance Global Lease and the Presidential Lease to be terminated and rejected prior to Closing. Notwithstanding anything to the contrary contained herein, Buyer and Seller each recognize and agree that the Closing of the transaction contemplated by this Agreement is conditioned upon the entry of an order by the Bankruptcy Court approving the sale of the Property to Buyer in accordance with the terms of this Agreement and making findings, inter alia, that Buyer purchased the Property in good faith and at arm's length, and entitling it to the protections of Section 363(m) of the Bankruptcy Court, which order shall not be subject to any stay imposed by any court on or prior to the date of Closing.

7. **Alternative Transaction.**    In the event the Property is sold to any party other than the Buyer pursuant to an order of the Bankruptcy Court ("**Alternative Transaction**"), within five (5) business days following the Closing of such Alternative Transaction, the Deposit shall be returned to Buyer and Seller shall reimburse Buyer for all of its documented out-of-pocket costs and attorneys' fees incurred in pursuing the purchase of the Property, not to exceed $50,000.

8. **Due Diligence Period.**    Buyer and/or its agents and employees shall have until the date that is ten (10) business days following the full execution of this Agreement, (the "**Due Diligence Expiration Date**" and such period, the "**Due Diligence Period**") to, among other things, conduct due diligence, speak with all relevant personnel about the Property, review all materials available, and conduct inspections of the Property.   Within one (1) business day following the execution of this Agreement, Seller shall provide to Buyer copies or electronic copies of such non-confidential and non-proprietary documents and materials as Buyer may request to the extent the same are within Seller's custody or reasonable control, provided that the same are not similarly available to Buyer.  In the event that the Property or the transaction contemplated herein, in Buyer's sole and absolute discretion, is not acceptable to Buyer, then Buyer may on or before the Due Diligence Expiration Date, terminate this Agreement for any reason or no reason by giving written notice to Seller and Agents and receive an immediate return of its Deposit.

9. **Physical Review.**    During the Due Diligence Period, Buyer and/or its agents and employees shall, with twenty-four (24) hours' notice, be able to enter the Property with Seller's representative from time to time for the purpose of performing surveys, examinations, environmental assessments, tests and borings as Buyer may determine to be reasonably necessary and desirable, so long as such studies do not result in a material change in the present character of the Property or any damage to any improvements located on the Property.  Any discussions with any tenant or any tenant representative and employees shall be conducted in the presence of Seller's representative. Buyer agrees that it will not perform any physically intrusive tests on the Property without Seller's prior written consent which shall not be unreasonably withheld, conditioned or delayed.  Prior to entry upon the Property, Buyer shall deliver to Seller evidence reasonably satisfactory to Seller that Buyer has obtained commercial general liability insurance in an amount of not less than one million

4

dollars ($1,000,000) and written on such forms as are reasonably acceptable to Seller, naming Seller as an additional insured, with respect to the Property. Buyer shall indemnify and defend Seller from all claims and liability for personal injury, death and property damage to all or any part of the Property by Buyer or third parties directly caused by Buyer or its agents during the Physical Review, which indemnity shall specifically survive Closing hereunder or termination of this Agreement. Buyer shall restore the Property to substantially the same condition in which it existed prior to Buyer conducting any such inspections. No inspections of areas deemed to be "critical" or "secured" by the tenant(s) shall be allowed.

In the event Buyer elects not to proceed beyond the Due Diligence Period, no party shall have any further rights against or obligations to, any other party, except as expressly set forth herein. In such event, Buyer shall furnish to Seller copies of any third-party reports and studies relating to the Property that are not proprietary to, or the work product of, Buyer.

10. **Risk of Loss.** The risk of loss or damage by fire or other casualty shall be and remain the responsibility of Seller until Closing. If at any time prior to Closing, the Property sustains any material damage, either structurally, environmentally or otherwise, then Purchaser shall have the option of either: (i) canceling this Agreement and receiving a refund of the Deposit, whereupon both parties shall be relieved of all further obligations under this Agreement; or (ii) proceed with Closing without reduction of the Purchase Price, and Purchaser shall be entitled to all condemnation awards and settlements, if any. The term **"material damage"** shall mean any damage that individually or in the aggregate, would cost in excess of Fifty Thousand Dollars ($50,000.00) to correct

11. **Prorations.**

   a. Real property taxes and assessments for the tax year in which the Closing occurs, rents and all utility bills shall be apportioned between Buyer and Seller as of the Closing Date. If final documentation of any such item is not available at the Closing, the required proration shall be made on the basis of the best available documentation and a further proration shall be made between the parties when the final documentation or billing becomes available, provided that if the final documentation or billing is not available within 30 days after the Closing, then no further proration shall be made.

   b. The parties agree that, after the Closing Date, each shall hold and shall promptly transfer and deliver to the other, from time to time as and when received by them, any cash, checks with appropriate endorsements or other property that they may receive on or after the Closing Date which properly belong to the other Party, including any insurance proceeds, and shall account to the other for all such receipts.

   c. The provisions of this Article 11 shall survive the Closing.

12. **Deliveries at Closing.** Seller shall deliver to Buyer at or before Closing the following:

   a. The Deed;

   b. A Bill of Sale substantially in the form of Exhibit C, executed by Seller, conveying all right, title and interest in any equipment or personal property planned to be conveyed with the Property to the Buyer;

c.   An Assignment of Contracts, Permits, Licenses and Warranties in the form attached hereto as Exhibit D, from Seller to Buyer;

d.   a customary owner's affidavit and gap undertaking, executed by Seller, sufficient to cause the Title Insurer to issue to Buyer the Title Insurance Policy in accordance with Article 5 hereof, without taking exception for the standard exceptions (including, without limitation, the so-called "gap" exception);

e.   A Foreign Investment in Real Property Tax Act affidavit in the form attached hereto as Exhibit E;

f.   The information required to file a Form 1099 with the Internal Revenue Service, if one is required;

g.   Any additional documents that Escrow Agent or Fidelity may reasonably require for the proper consummation of the transaction contemplated by this Agreement, including, without limitation, any applicable broker's lien waivers.

At Closing, Buyer shall deliver: (i) the Purchase Price to Seller; (ii) evidence of the authority and capacity of Buyer and the representatives of Buyer; and (iii) the closing settlement statement.

13. **Closing Costs**. Each party shall be responsible for its own legal fees in connection with the Closing. Seller shall pay (i) the cost of preparing the Deed, (ii) the cost to obtain the release and/or removal of any liens on the Property and any Other Title Exceptions, (iii) the Virginia state and local Grantor's tax, (iv) the Regional Congestion Fee, and (v) one-half of the Escrow Agent's fees. Buyer shall pay (i) the costs of Buyer's inspections, title searches, lien searches, etc., (ii) the cost of any survey obtained by Buyer, (iii) the premiums for the Title Insurance Policy and any mortgagee's policy (plus the cost of any endorsements) obtained by Buyer for the Property, (iv) the recording costs, if any, of the Deed, and (v) one-half of the Escrow Agent's fees. Each party shall pay its own attorneys' and advisors' fees, charges and disbursements.

14. **Seller's Warranties and Environmental Matters.**

Seller warrants as follows:

a.   Seller is validly organized and existing and is currently in good standing with all state, federal and local governing agencies.  Seller is the fee simple owner of the Property and the person signing this Agreement has the full and complete power and authority to do so and to bind Seller to the provisions contained herein;

b.   There is no lease, outstanding option, or purchase agreement to purchase all or any portion of the underlying Property.

c.   Seller has the requisite authority to execute and deliver this Agreement and any documents required to consummate the transactions contemplated by this Agreement.  Upon entry of the Approval Order, this Agreement shall be a valid and binding obligation of Seller, enforceable against Seller in accordance with its terms.

d.   Seller shall give appropriate notice to all potential claimants in the Estate and parties with liens, claims and encumbrances on the Property that is the subject of this Agreement and the consummation of the transactions contemplated hereby.  Prior to filing the sale motion,

6

Seller shall provide Buyer with a draft of the motion, and the proposed service list, and shall make any additions, revisions or corrections requested by Buyer.

e.  No representation or warranty by Seller in this Agreement or in any instrument, certificate or written statement furnished to Buyer by Seller pursuant hereto, or in connection with the transaction contemplated hereby, contains or will contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements contained herein or therein not misleading.

f.  To the best of Seller's knowledge, no underground storage tanks, items or equipment containing polychlorinated biphenyls (PCBs) in excess of 50 parts per million, accumulation of tires, batteries, mining spoil, dry cleaning solutions or solvents, or other hazardous substances as defined by any federal, state and local law ("Hazardous Substances") are present on the Property;

g.  To the best of Seller's knowledge, during the period of Seller's ownership of the Property: (1) there has been no release, discharge or treatment of any Hazardous Substances on the Property; (2) there has been no storage, generation, or disposal of any Hazardous Waste (as defined by any federal, state and local law) or dangerous waste on the Property; (3) no petroleum products have been spilled or leached upon or in the Property; (4) no radon gas has been detected at the Property; (5) the Property has not been the subject of any federal, state or local governmental action or third party claim because of the release, threat of release, discharge, storage, treatment, generation emission or disposal of any substance on, in or from the Property; and;

h.  To the best of Seller's knowledge, there is no lien for environmental investigation or remediation, citizens suit or other litigation, administrative order or proceeding, investigation or settlement that is in existence, proposed or anticipated, concerning any environmental matter related to the Property.

15. **Buyer's Warranties**

Buyer warrants as follows:

a.  Buyer is an individual residing the Commonwealth of Virginia and is currently in good standing with all state, federal and local governing agencies; and

b.  The person signing this Agreement bas the full and complete power and authority to do so and to bind Buyer to the provisions contained herein.

c.  Buyer is not represented by a broker.

16. **Agency and Commissions.**   Marcus and Millichap represents the Seller and is being paid by Seller pursuant to a separate Agreement. Buyer and Seller hereby represent and warrant to the other that it has not dealt with or through any agent other than the agent(s) named in the first sentence of this Section. Buyer and Seller shall indemnify and hold the other party harmless from any and all costs, expenses, claims and liabilities (including reasonable attorneys' fees) resulting from a claim by any agent not named herein. The terms of this Section shall survive closing hereunder. No Leasing Fees shall be paid to any Broker by Buyer.

7

17. **Defaults.**    Following the conclusion of the Due Diligence Period, in the event that Buyer has not terminated this Agreement prior to the conclusion of the Due Diligence Period, but shall then fail to purchase the Property in violation of the terms and conditions of this Agreement, or otherwise default in the performance of Buyer's obligations pursuant to this Agreement for any reason whatsoever other than Seller's default, then Escrow Agent shall deliver the Deposit to Seller, as liquidated damages as Seller's sole and absolute remedy hereunder. In the event that Seller shall default in the performance of Seller's obligations hereunder for any reason whatsoever other than Buyer's default, then Buyer shall be entitled to exercise any of the following remedies, at Buyer's election, and no others: (i) purchase the Property notwithstanding such default pursuant to the remaining terms and provisions of this Agreement, in which event such default shall be deemed waived; or (ii) sue for specific performance; or (iii) terminate this Agreement and Buyer shall also be entitled to the return of the Deposit and no party shall have any further rights against or obligations to, any other party, except as expressly stated above. In the event of a default hereunder, the defaulting party shall pay the reasonable attorneys' fees and costs incurred by the non-defaulting party in enforcing the terms of this Agreement.

18. **Notices.**    All notices and communications hereunder, including change of address, shall be in writing and shall be deemed to have been duly given when delivered by hand; or deposited at the U.S. Postal Service by certified mail, first class, postage prepaid, return receipt requested; or sent for next day delivery via a recognized overnight courier service such as FedEx or UPS with charges billed to the sender or when delivered via e-mail to the addresses following the signature lines hereto.

19. **Successors.**    The parties to this Agreement mutually agree that it shall be binding upon them and each of their successors, heirs, personal representatives and assigns. No consent of Seller shall be required for an assignment by Buyer to an entity of which Buyer is a controlling principal, including, without limitation, a trust established by Buyer. An assignment shall not be deemed to relieve the Buyer of its obligations hereunder.  This Agreement contains the final and entire agreement between the parties hereto, and neither they nor their agents shall be bound by any terms, conditions, warranties, or representations, oral or written, not herein contained.  This Agreement may not be amended except by written agreement between the parties hereto.

20. **Survival.**    It is understood and agreed that any provision of this Agreement which by its nature and effect is required to be kept, observed or performed after the settlement, delivery and recording of the Deed conveying title to Buyer shall survive Closing, delivery and recording of the Deed hereunder for a period of three (3) months and shall not be merged therein.

21. **Law Applicable.**    This Agreement shall be construed in accordance with the laws of the Commonwealth of Virginia without regard to its conflict of laws principles.

22. **Condition of the Property.** BUYER AGREES THAT IT WILL PERFORM ALL SUCH EXAMINATIONS AND INVESTIGATIONS OF THE PROPERTY THAT IT DEEMS NECESSARY, INCLUDING SPECIFICALLY, WITHOUT LIMITATION, EXAMINATIONS AND INVESTIGATIONS FOR THE PRESENCE OF HAZARDOUS MATERIALS (AS THOSE TERMS MAY BE DEFINED BY APPLICABLE FEDERAL OR STATE LAW, RULE OR REGULATION) ON THE PROPERTY, AND THAT BUYER WILL RELY SOLELY UPON SUCH EXAMINATIONS AND INVESTIGATIONS IN PURCHASING THE PROPERTY. EXCEPT AS OTHERWISE HEREIN PROVIDED: (I) IT IS EXPRESSLY UNDERSTOOD AND AGREED THAT BUYER IS PURCHASING THE PROPERTY "AS IS" AND "WHERE IS,"

8

AND WITH ALL FAULTS AND THAT SELLER IS MAKING NO REPRESENTATIONS OR WARRANTIES, WHETHER EXPRESS OR IMPLIED, BY OPERATION OF LAW OR OTHERWISE, WITH RESPECT TO THE QUALITY, PHYSICAL CONDITION OR VALUE OF THE PROPERTY, THE INCOME OR EXPENSES FROM OR OF THE PROPERTY, THE BOOKS AND RECORDS RELATING TO THE PROPERTY OR THE COMPLIANCE OF THE PROPERTY WITH APPLICABLE BUILDING OR FIRE CODES OR OTHER LAWS OR REGULATIONS, AND (II) WITHOUT LIMITING THE FOREGOING, IT IS UNDERSTOOD AND AGREED THAT SELLER MAKES NO WARRANTY OF HABITABILITY, SUITABILITY, MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. BUYER AGREES THAT SELLER IS NOT LIABLE OR BOUND BY ANY GUARANTEES, PROMISES, STATEMENTS, REPRESENTATIONS OR INFORMATION PERTAINING TO THE PROPERTY MADE OR FURNISHED BY ANY REAL ESTATE AGENT, BROKER, EMPLOYEE, SERVANT OR OTHER PERSON REPRESENTING OR PURPORTING TO REPRESENT SELLER, EXCEPT AS AND TO THE EXTENT EXPRESSLY SET FORTH HEREIN. BUYER AND SELLER AGREE THAT THE PROVISIONS OF THIS SECTION SHALL SURVIVE THE CLOSING OF THE TRANSACTION CONTEMPLATED BY THIS AGREEMENT.

23. **Electronic Signatures.** *The parties hereby consent that electronic signatures of either or both parties shall be acceptable and equally enforceable as original ones on all documents in this transaction, including, but not limited to, this Agreement, notices and closing documents.*

24. **Exchange.**    The parties acknowledge that Seller or Buyer may wish to enter into a like kind exchange (either simultaneous or deferred) with respect to the Property (the "Exchange") pursuant to the applicable provisions of Section 1031 of the Internal Revenue Code of 1986, as amended. Notwithstanding anything to the contrary contained in this Agreement, Seller or Buyer shall have the right to assign its interest under this Contract without the other party's consent for the sole purpose of enabling the assigning party to effectuate the Exchange, including execution of any necessary acknowledgment documents; provided, however, that notwithstanding any such assignment, the exchanging party shall not be released from any of its liabilities, obligations or indemnities under this Contract; the other party shall cooperate in all reasonable respects with the assigning party to effectuate such Exchange.

25. **Other Provisions.**

    a.  In the event that any date or any period provided for in this Agreement shall end on a Saturday, Sunday or legal holiday, the applicable date or period shall be extended to the first business day following such Saturday, Sunday or legal holiday.

    b.  Buyer and Seller agree to provide the Escrow Agent their respective Taxpayer identification numbers upon written request from the Escrow Agent.

    c.  The captions in this Agreement are inserted for reference only and in no way define, describe or limit the scope or intent of this Agreement or of any of the provisions hereof. Whenever required by the context of this Agreement, the singular shall include the plural and the masculine shall include the feminine and vice versa. All references in this Agreement to Articles, Sections and Exhibits are references to the Articles and the Sections of this Agreement, and the Exhibits attached hereto, unless expressly otherwise designated in the context. The words "include" and "including" shall be construed for purposes of this

9

Agreement as being followed by the phrase "without limitation." Each party acknowledges that it and its counsel have reviewed and revised this Agreement and that the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement.

d.   Seller expressly acknowledges and agrees that Seller shall not continue to promote, advertise, market, list, or otherwise solicit offers to purchase the Property or any portion thereof prior to closing under the terms of this Agreement. Without limiting the foregoing, because Seller is a debtor-in-possession under the Bankruptcy Code with fiduciary duties to its creditors and other parties in interest, Buyer acknowledges that Seller retains the right to consider and present an Alternative Transaction to the Bankruptcy Court for approval.

e.   **Contingency**. This Agreement shall not be valid and binding on either party until the Agreement has been fully-executed by both Buyer and Seller.  Notwithstanding the foregoing, if Seller has not executed this Agreement and delivered a copy thereof to Buyer by 5 p.m. on Friday, April 12, 2019, then Buyer's offer to purchase the Property pursuant to the terms of this Agreement shall be withdrawn and this Agreement shall be void, and of no force and effect.

[Signatures to follow on next page.]

10

IN WITNESS WHEREOF, the parties hereto have executed this Agreement and have caused their names to be hereunto subscribed on the day and year written below:

SELLER:

**INTERNATIONAL PLACE AT TYSONS, LLC,** a Virginia limited liability company

Date: April 12, 2019

By: _____

**Name: Andrew S. Garrett**
**Title: Its Managing Member**

ADDRESS FOR SELLER NOTICES:

Address:    c/o The Garrett Companies
85 Mine Road, Suite 115
Stafford, VA  22554
Attn.:  Mr. Andrew S. Garrett
agarrett@garrettdevelopment.com
(540) 659-6172

BUYER:

**OMAR AYESH**

Date: April 12, 2019

By: _____

**Omar Ayesh**

ADDRESS FOR BUYER NOTICES:

Address:    Mr. Omar Ayesh
Nobles Properties
1567 Regatta Ln,
Reston, VA 20194
oayesh@noblesproperties.com
(703) 220-3999

11

## EXHIBIT A

### DESCRIPTION OF PROPERTY

The approximately 5.40 acres of land and existing single-story retail building and adjacent parking areas located thereon, commonly known as 8201 Leesburg Pike, McLean, Virginia, and having the following parcel numbers : 0391-06-0038, 0392-02-0039.

ACTIVE 41693463v7

**EXHIBIT B**

SPECIAL WARRANTY DEED

Prepared by and return to:

| | |
|---|---|
| Total Consideration: | $_____ |
| Grantee's Address: | _____ |
| Tax Map Numbers: | _____ |

**VIRGINIA SPECIAL WARRANTY DEED**

     **THIS DEED** is made as of this _____ day of _____, 2019, by and between **INTERNATIONAL PLACE AT TYSONS, LLC**, a Virginia limited liability company/partnership (the "Grantor"); and _____, a _____ corporation/limited liability company/partnership (the "Grantee").

**W I T N E S S E T H**

     That for and in consideration of the sum of Ten Dollars ($10.00) cash in hand paid, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Grantor hereby bargains, sells, grants and conveys with Special Warranty, unto the Grantee, its successors and assigns, in fee simple, the following described real estate, to-wit (the "Property"):

     Legal Description attached hereto as <u>Exhibit A</u>.

     TOGETHER with all easements, rights-of-way, appurtenances and privileges belonging or appurtenant to such land.

     TO HAVE AND TO HOLD all of the aforesaid property (the "Property") unto the use and benefit of Grantee, its successors and assigns, in fee simple forever.

     This conveyance is made SUBJECT TO those Permitted Exceptions as set forth on <u>Exhibit "B"</u>, attached hereto and made a part hereof;

13

IN WITNESS WHEREOF, Grantor has duly executed and delivered this Special Warranty Deed as of the date first above written.

**INTERNATIONAL PLACE AT TYSONS, LLC,**
a Virginia limited liability company


By:_____
Its:_____

COMMONWEALTH OF VIRGINIA

COUNTY OF FAIRFAX, To-wit:

The foregoing instrument was acknowledged before me in the above-stated jurisdiction this _____ day of _____, 2019 by _____, as _____ of _____, a _____ corporation/limited liability company/partnership on behalf of the corporation/limited liability company/partnership.

_____
Notary Public

My commission expires: _____

Mail tax bills to:

**Exhibit "A"**

**(Legal Description)**

Exhibit "B"

**(PERMITTED ENCUMBRANCES)**

## EXHIBIT C

## BILL OF SALE

THIS BILL OF SALE (this "Bill of Sale") is executed and delivered as of the ____ day of _____, 2019 pursuant to that certain Purchase Agreement ("Agreement"), dated April ___, 2019, by and between International Place at Tysons, LLC or assigns, a Virginia Limited Liability Company ("Seller"), and Omar Ayesh ("Purchaser"), covering the real property described in Exhibit A attached hereto ("Property").

For good and valuable consideration, Seller hereby sells, transfers, sets over and conveys to Purchaser the following (the "Personal Property"):

Tangible Personal Property. All of Seller's right, title and interest in and to all fixtures, furniture, equipment, and other tangible personal property, if any, owned by Seller presently located on the Property, but excluding word processing and computing equipment (such as, but without limitation, CPUs, printers, hubs, switches, firewalls, networking equipment and modems; provided, however, such excluded computing equipment shall not include switches, hubs, network equipment or other equipment or fixtures incorporated into the Property or otherwise used to connect to building systems, security systems, utility meters or telecommunications systems, all of which shall be included in the Personal Property) and any items of personal property owned by tenants, any managing agent or other third parties.

Intangible Personal Property. All of Seller's right, title and interest, if any, in and to all of the following items, to the extent assignable and without warranty (the "Intangible Personal Property"): (i) licenses, permits and other entitlements relating to the operation and proposed future development of the Property, (ii) the right to use the name of the Property (if any) in connection with the Property, (iii) if still in effect, guaranties and warranties received by Seller from any contractor, manufacturer or other person in connection with the construction or operation of the Property and (iv) as built plans and specifications for the improvements located on the Property, floor plans, existing surveys and manuals related to the maintenance and operation of building systems and equipment.

Seller has not made and does not make any express or implied warranty or representation of any kind whatsoever with respect to the Personal Property, including, without limitation, with respect to title, merchantability of the Personal Property or its fitness for any particular purpose, the design or condition of the Personal Property; the quality or capacity of the Personal Property; workmanship or compliance of the Personal Property with the requirements of any law, rule, specification or contract pertaining thereto; patent infringement or latent defects. Purchaser accepts the Personal Property on an "as is, where is" basis. Notwithstanding the foregoing, Seller represents and warrants that Seller is the owner of the Personal Property and that the Personal Property is free of liens, security interests and other encumbrances.

IN WITNESS WHEREOF, Seller has caused this instrument to be executed and delivered as of this ___ day of _____, 2019.

SELLER:

International Place at Tysons, LLC or assigns, a
Virginia Limited Liability Company

By: _____
Name:  Andrew S. Garrett
Title:  Its Managing Member

*ACTIVE 41693463v7*

## EXHIBIT A

## DESCRIPTION OF PROPERTY

*ACTIVE 41693463v7*

## EXHIBIT D

## ASSIGNMENT OF CONTRACTS, PERMITS, LICENSES AND WARRANTIES

THIS ASSIGNMENT OF CONTRACTS, PERMITS, LICENSES AND WARRANTIES (this "Assignment") is executed and delivered as of the ____ day of _____, 2019 pursuant to that certain Purchase Agreement ("Agreement"), dated April ___, 2019, by and between International Place at Tysons, LLC or assigns, a Virginia Limited Liability Company ("Assignor"), and Omar Ayesh ("Assignee"), covering the real property described in Exhibit A attached hereto ("Real Property").

## W I T N E S S E T H:

WHEREAS, pursuant to the terms of the Purchase Agreement, dated February __, 2019, Assignee has agreed to purchase from Assignor as of the date hereof, and Assignor has agreed to sell to Assignee, the Real Property; and

WHEREAS, Assignor desires to assign to Assignee as of the date hereof all of Assignor's right, title and interest in contracts, assignable warranties and assignable permits, trademarks and licenses held by Assignor in connection with the Real Property as set forth on Schedule I attached hereto and made a part hereof (collectively, the "Contracts").

NOW THEREFORE, in consideration of the premises and the mutual covenants herein contained, the Assignor hereby assigns, sets over and transfers unto Assignee to have and to hold from and after the date hereof all of the right, title and interest of Assignor in, to and under the Contracts.

Subject to the limitations set forth below, Assignor does hereby agree to defend, indemnify and hold harmless Assignee from any liability, damages (excluding speculative damages, consequential damages and lost profits), causes of action, expenses and reasonable attorneys' fees incurred by Assignee by reason of the failure of Assignor to have fulfilled, performed and discharged all of the various commitments, obligations and liabilities of the Assignor under and by virtue of the Contracts arising prior to the date of this Assignment.

Subject to the limitations set forth above, Assignee does hereby agree to defend, indemnify and hold harmless Assignor from any liability, damages (excluding speculative damages, consequential damages and lost profits), causes of action, expenses and reasonable attorneys' fees incurred by Assignor by reason of the failure of Assignee to have fulfilled, performed and discharged all of the various commitments, obligations and liabilities under and by virtue of the Contracts arising on or after the date of this Assignment.

This Assignment shall be governed by the laws of the Commonwealth of Virginia, applicable to agreements made and to be performed entirely within said Commonwealth.

[No further text on this page.]

4

IN WITNESS WHEREOF, Assignor has executed this Assignment this _____ day of _____, 2019, which Assignment is effective this date.

ASSIGNOR:

International Place at Tysons, LLC, a Virginia Limited Liability Company

By: _____
Name: Andrew S. Garrett
Title: Its Managing Member

ASSIGNEE:

Omar Ayesh


By: _____

## SCHEDULE 1

## ASSIGNED CONTRACTS

**EXHIBIT E**

**CERTIFICATE OF NON-FOREIGN STATUS**

**INTERNATIONAL PLACE AT TYSONS, LLC**

Reference is hereby made to <u>Section 12(g)</u> of that certain Purchase Agreement, dated as of April __, 2019, by and among Omar Ayesh ("<u>Buyer</u>"), International Place at Tysons, LLC or assigns, a Virginia Limited Liability Company ("<u>Seller</u>"). Section 1445 of the Internal Revenue Code of 1986, as amended (the "<u>Code</u>"), provides that a transferee of a U.S. real property interest must withhold tax if the transferor is a foreign person. To inform Buyer that withholding of tax is not required upon the disposition of a U.S. real property interest by Seller, the undersigned hereby certifies the following on behalf of Seller:

1.    Seller is not a foreign corporation, foreign partnership, foreign trust or foreign estate (as those terms are defined in the Code and the Treasury Regulations promulgated thereunder);

2.    Seller is not a disregarded entity as defined in Treas. Reg. §1.1445-2(b)(2)(iii);

3.    Seller's U.S. employer identification number is [_____]; and

4.    Seller's office address is _____.

Seller understands that this certification may be disclosed to the Internal Revenue Service by Buyer and that any false statement contained herein could be punished by fine, imprisonment or both.

Under penalties of perjury I declare that I have examined this certification and to the best of my knowledge and belief it is true, correct and complete, and I further declare that I have authority to sign this document on behalf of Seller.

Date:    April __, 2019


INTERNATIONAL PLACE AT TYSONS, LLC,
a Virginia limited liability company


By: _____
Name: Andrew S. Garrett
Title:  Its Managing Member